UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CORNELIUS BENNETT, | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:23-cv-00744-SRC |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

**Memorandum and Order**

Petitioner Cornelius Bennett seeks to have his sentence vacated under 28 U.S.C. § 2255. Bennett asserts multiple claims: (1) ineffective assistance of counsel, (2) extreme and compelling safety hazards, and (3) unlawful sentencing. Upon review, the Court finds that Bennett is not entitled to an evidentiary hearing or relief under section 2255.

**I.    Statement of facts**[1]

In the plea agreement, the parties agreed to the following facts:

> On January 06, 2021, at or around 03:00 PM, Saint Louis County Police were en route to conduct surveillance in the Castle Point area, a neighborhood located in the Eastern District of Missouri, when one of their unmarked patrol vehicles was almost struck by a Jeep Grand Cherokee STR traveling at a high rate of speed. Police initiated pursuit of the Grand Cherokee and noticed that the driver of the Grand Cherokee, later determined to be [Bennett], began applying his brakes in an attempt to abruptly slow the speed of his vehicle before entering into the center turning lane. Police continued following [Bennett] and noticed that [Bennett] was looking in their direction through the rearview mirror. Police activated their lights and siren and attempted to initiate a traffic enforcement stop. Thereafter, [Bennett] executed a left turn into a nearby parking lot, disregarding upcoming, eastbound traffic, at a high rate of speed—several vehicles had to stop abruptly to avoid striking [Bennett]'s vehicle.
>
> [Bennett] maneuvered through the parking lot, exited onto Monarch Drive, and returned to Chambers Road, where he was again observed traveling eastbound at a high rate of speed. Police continued their pursuit of [Bennett], notified dispatch

---

[1] The "doc." numbers used in the "Statement of facts" section is from *United States v. Cornelius Bennett,* Case No. 4:21-cr-00017-SRC.

of his direction of travel, and observed that [Bennett] presented a substantial risk to the general public, his passenger and to law enforcement through the reckless and/or dangerous manner in which he was operating his vehicle. Officers positioned at the intersection of Lewis and Clark Boulevard and St. Cyr Road deployed a tire deflation device in anticipation of [Bennett]'s arrival—[Bennett] drove over it and penetrated his front right tire. [Bennett] nonetheless continued to evade law enforcement as he traveled on Lewis and Clark Boulevard, Halls Ferry Circle, and later westbound Goodfellow Boulevard, at a high rate of speed, before turning into a nearby alley and stopping at the rear of 8615 Tara Lane.

Police observed [Bennett] exit the driver seat of the Grand Cherokee and commanded, "Police, show me your hands!" [Bennett] disregard[ed] their command, ran towards 8615 Tara Lane with a large black canvas[] bag in his hand and a Louis Vuitton satchel slung across his chest, and attempt[ed] to scale a fence—the fence collapsed on him. Police tackled [Bennett] to the ground before he could return to his feet and placed him under arrest. A search incident to arrest of [Bennett]'s person revealed: $7,095.00, two bags containing a green leafy substance, and an AT&T black flip phone. A search of the black canvas[] bag revealed: three clear bags—large, medium, and small in size—containing a crystal substance, additional clear bags containing white powder, a black digital scale, and [Bennett]'s Missouri identification card.

Police responded next to [Bennett]'s Grand Cherokee where officers observed a black firearm loaded with a high-capacity magazine lying on the driver's seat. The firearm was later determined to be a stolen Glock make, 19 model, 9mm caliber, semi-automatic pistol and was loaded with 30 rounds. Police further collected $500 and several multicolored capsules containing white powder strewn throughout [Bennett]'s vehicle. [Bennett] later admitted that he was a convicted felon, that he was a prohibited person from possessing a firearm, and that he evaded police because he "just got off probation" and knew that he had both a pistol and "that bag of stuff" inside of his vehicle.

The suspected controlled substances were submitted to, and analyzed by, an expert criminalist with the St. Louis County Police Crime Laboratory. The criminalist confirmed the suspected contraband, specifically, the crystalline substance and the white powder, contained a mixture or substance containing a detectable amount of methamphetamine (crystalline substance) and a detectable amount of fentanyl (white powder). [Bennett] admits to possessing methamphetamine, in excess of 50 grams, and fentanyl, in excess of 40 grams, with intent to distribute all or some to another person.

An expert firearm examiner later determined that the recovered firearm could expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law. [Bennett] admits to possessing a firearm in furtherance of his possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule[] II controlled substance, in excess of 40 grams, as charged in Count Three of the Superseding Indictment,

>   among other controlled substances.  [Bennett] further admits that the firearm was possessed to protect him from being robbed of the methamphetamine, fentanyl, marijuana, and/or cash in his possession.

Doc. 66 at § 4.

## II. Procedural history[2]

In January 2021, the United States, by way of criminal complaint, charged Bennett with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  Doc. 1.  A week later, a federal grand jury indicted Bennett on multiple counts.  Docs. 13–14.  Then, in February 2021, a federal grand jury returned a superseding indictment, charging Bennett with one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1); and one count possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  Docs. 26–27.

### A. Plea agreement

In March 2021, Bennett waived the filing of pretrial motions, stating "[t]here are no issues [Bennett] wishes to raise by way of pre-trial motion."  Doc. 35.  About a year later, Bennett entered into a plea agreement with the United States.  Doc. 66.  As part of the agreement, Bennett agreed to plead guilty to count 3, possession with intent to distribute fentanyl, and count 4, possession of a firearm in furtherance of a drug trafficking crime.  *Id*. at 1–2.  In return, the United States agreed to dismiss, at sentencing, count 1, felon in possession of a

---

[2] With the exception of subsections D ("Sentencing") and E ("Section 2255 motion"), the "doc." numbers used in the "Procedural history" section are from *United States v. Cornelius Bennett,* Case No. 4:21-cr-00017-SRC.

firearm, and count 2, possession with intent to distribute methamphetamine. *Id*. at 1. Further, the parties agreed on a base-offense level of 30 for count 3, pursuant to section 2D1.1(c)(5) of the United States Sentencing Guidelines Manual, because Bennett "[wa]s accountable" for "at least 1000 [sic] kilograms but less than 3,000 kilograms of a converted drug weight." *Id*. at 7.

As for Bennett's appeal rights, the parties agreed to waive "all rights to appeal all non-jurisdictional, non-sentencing issues, including . . . any issues relating to pretrial motions." *Id*. at 9. Additionally, "[i]n the event the Court accept[ed] the plea . . . and sentence[d] [Bennett] within or below [the Sentencing Guidelines] range," Bennett would "waive[] all rights to appeal all sentencing issues other than Criminal History." *Id*. at 10. Finally, Bennett "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to . . . Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id*.

B.   **Change-of-plea hearing**

In February 2022, the Court held a change-of-plea hearing at which Bennett pleaded guilty to counts 3 and 4 of the superseding indictment. Docs. 65, 87. During the hearing, Bennett confirmed that he was fully satisfied with the services that his counsel, Michael Jones and Travis Noble, had performed for him in the case. Doc. 87, Plea Tr. at 8:3–12. The Court then reviewed Bennett's waiver of pretrial motions, and Bennett affirmed the waiver:

| | |
|---|---|
| **THE COURT:** | I'm going to discuss with you waiving pretrial motions and trial rights. Do you understand that, by pleading guilty, you're giving up the right to file pretrial motions, including motions to suppress any evidence or any statements that you may have made? |
| **[BENNETT]:** | Yes, sir, I do understand. |
| **THE COURT:** | Did you discuss that decision with your attorneys? |
| **[BENNETT]:** | Yes, sir, I did. |

4

| | |
|---|---|
| **THE COURT:** | Are you fully satisfied with the decision you and your attorneys have made about waiving pretrial motions? |
| **[BENNETT]:** | Yes, sir, I have. |

*Id.*, Plea Tr. at 8:13–25.

Further, Bennett acknowledged that, before he signed his plea agreement, he had the opportunity to review the entire document and ask his counsel any questions. *Id.*, Plea Tr. at 11:2–4, 14–22. Then Bennett confirmed all the facts set forth in the plea agreement and that by admitting those facts, they would become relevant conduct for his sentence:

| | |
|---|---|
| **THE COURT:** | Section 4 of the plea agreement sets forth the facts you, your attorneys, and the prosecutor have agreed are all true and correct. I take it you've gone through Section 4 in detail with your attorneys and you understand all of the facts set forth in Section 4; is that right? |
| **[BENNETT]:** | Yes, sir, Your Honor, I do. |
| **THE COURT:** | Do you understand that, if you admit those facts, they become what is called relevant conduct, which is conduct that I can and will take into account in determining your sentence in this case? |
| **[BENNETT]:** | Yes, sir, Your Honor. |
| **THE COURT:** | Do you agree that all of the facts set forth in Section 4 of the plea agreement are true and correct and that you, in fact, did do all of those things? |
| **[BENNETT]:** | Yes, sir, Your Honor, I did, and they are true. |

*Id.*, Plea Tr. at 15:15–16:6. Later, the prosecutor recited the facts from the plea agreement, and Bennett again confirmed he did "all of the things that [the prosecutor] said." *Id.*, Plea Tr. at 18:10–21. Near the end of the hearing, the Court asked Bennett if he was "pleading guilty because [he] [is], in fact, guilty as charged." *Id.*, Plea Tr. at 30:18–19. And Bennett responded, "Yes, sir. I'm pleading guilty because I am guilty, Your Honor." *Id.*, Plea Tr. at 30:20–21.

5

### C. Presentence investigation report

Following the change-of-plea hearing, the United States Probation Office prepared a presentence-investigation report. Doc. 72. The PSR calculated Bennett's base-offense level for count 3 as 30—just as the plea agreement contemplated—because the offense involved 842.65 kilograms of methamphetamine and 187.50 kilograms of fentanyl. *Id*. at 7; *see also* doc. 66 at 7. After including all relevant enhancements and reductions, the PSR determined Bennett's total-offense level as 29. Doc. 72 at 7–8. Further, the report calculated Bennett's criminal-history score as 14, resulting in a criminal-history category of VI. *Id*. at 14. Based on a total-offense level of 29 and criminal history of VI, the PSR calculated the sentencing-guidelines range as 151 to 180 months for count 3. *Id*. at 21. Additionally, count 4 required a 60-month term of imprisonment, imposed consecutively to any other term of imprisonment. *Id*. In keeping with these determinations, the parties jointly recommended that the Court sentence Bennett to a 180-month imprisonment term. *Id*. at 22.

Initially, Bennett filed an objection to the PSR, but he did not object to the base-offense level. Doc. 70. Less than a week later, Bennett withdrew all his objections. Doc. 71.

### D. Sentencing

In June 2022, the Court held a sentencing hearing. Docs. 80, 85. Bennett confirmed at the start of the hearing that he pleaded guilty because he is, in fact, guilty as charged. Doc. 85, Sent. Tr. at 3:4–6. Additionally, Bennett confirmed he remained "fully satisfied" with his attorneys' services. *Id*., Sent. Tr. at 3:7–17. And he stated he had no objections to the presentence report. *Id*., Sent. Tr. at 5:6–9.

At the conclusion of the hearing, the Court granted the parties' joint request of a downward variance and sentenced Bennett to a 180-month term of imprisonment. *Id*., Sent. Tr. at 17:18–18:5. That same day, Bennett signed a Local Rule 12.07 Notice of Compliance

acknowledging that he was fully informed of his appeal rights, that he did not wish to file a Notice of Appeal, and that he had instructed his attorney not to file a Notice of Appeal. Doc. 83. Bennett—previously incarcerated at USP McCreary in Pine Knot, Kentucky, doc. 3-1 at 1—is currently serving his term of imprisonment at USP Lee in Pennington Gap, Virginia with a projected release date of November 14, 2033.[3]

      **E.**     **Section 2255 motion**

In June 2023, Bennett filed a motion to vacate his sentencing under 28 U.S.C. § 2255. Doc. 1. Bennett raises two ineffective-assistance-of-counsel claims. Doc. 3 at 4–5. Both pertain to Bennett's counsel's not investigating pretextual stops and not filing a motion to suppress. Doc. 3-2. Further, Bennett raises a claim pertaining to his prison conditions. Doc. 3 at 7. Finally, Bennett alleges his sentence is lengthier than warranted. Doc. 3-1 at 1–2.

In response, the United States argues that the Court should dismiss Bennett's motion in its entirety. Doc. 10. Bennett missed his reply deadline, and as of this date, has not filed a reply. *See* doc. 4. As such, his motion is ripe for the Court's consideration.

**III.**     **Standard**

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under section 2255, the petitioner must establish a constitutional or federal statutory

---

[3] *Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 28, 2024).

violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (citation omitted).

Claims brought under section 2255 may be limited by procedural default.  A petitioner "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (citations omitted).  However, the Eighth Circuit has noted in dicta in two cases that, if the error claimed by a petitioner is jurisdictional, the error may be raised on collateral review without being subjected to procedural-default analysis.  *Beaulieu v. Minnesota*, 583 F.3d 570 (8th Cir. 2009); *United States v. Mooring*, 287 F.3d 725, 727 (8th Cir. 2002) ("if the error is jurisdictional, the error may be raised on collateral review without being subjected to procedural default analysis."); *but see Tripp v. United States*, No. 1:11-cv-00118-ERW, 2012 WL 27930 (E.D. Mo. Jan. 5, 2012) ("constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion unless the movant can establish '(1) cause for the default and actual prejudice or (2) actual innocence.'" (quoting *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001))); *Snider v. United States*, No. 4:09-cv-01171-HEA, 2011 WL 6372345 (E.D. Mo. Dec. 20, 2011) (same).

Ineffective-assistance-of-counsel claims may be raised for the first time in a section 2255 motion even if they could have been raised on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  This exception exists to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.*  Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal.  *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

8

To succeed on an ineffective-assistance-of-counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *United States v. Sera,* 267 F.3d 872, 874 (8th Cir. 2001); *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to section 2255. *DeRoo*, 223 F.3d at 925. An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88; *Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, the law applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Similarly, counsel is not ineffective for failing to pursue a motion to suppress that he reasonably believes would be futile. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

9

IV.     Discussion[4]

      A.     **Claims of ineffective assistance of counsel**

Bennett raises duplicative ineffective-assistance-of-counsel claims. *See* doc. 3-2 at 1 (identifying "ground one" as counsel's "failure to investigate and file a motion to suppress illegally seized evidence"); *id*. at 2–3 (identifying "ground two" as counsel's "omission" of pretrial motion and failure to perform a "cursory investigation"). For both, Bennett essentially argues that counsel was ineffective for failing to investigate pretextual stops and for failing to file a pretrial suppression motion. Bennett's claims fail for multiple reasons.

First, Bennett waived his right to appeal issues relating to pretrial motions. "A valid guilty plea . . . waives all suppression issues not expressly reserved by a conditional plea . . . and waives a defendant's 'independent claims relating to the deprivation of constitutional rights that occurred prior to' pleading guilty." *United States v. Pierre*, 870 F.3d 845, 848 (8th Cir. 2017) (first citing *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010); and then quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Such "waiver covers [a defendant's] claim for suppression of evidence based on . . . the Constitution." *Id*.

At three different times, Bennett confirmed his waiver of his right to file pretrial motions. In March 2021, Bennett filed a pretrial-motion waiver, stating "[t]here are no issues [Bennett] wishes to raise by way of pre-trial motion." Doc. 35. Next, in the plea agreement, Bennett agreed to waive "all rights to appeal all non-jurisdictional, non-sentencing issues, including . . . any issues relating to pretrial motions." *Id*. at 9. Finally, at the change-of-plea hearing, the Court confirmed Bennett's waiver:

---

[4] "Doc. 35," "Doc. 66," "Doc. 72," "Doc. 85," and "Doc. 87" used in the "Discussion" section are from *United States v. Cornelius Bennett,* Case No. 4:21-cr-00017. All other "doc." numbers used in the "Discussion" section are from *Cornelius Bennett v. United States,* Case No. 4:23-cv-00744-SRC.

| | |
|---|---|
| THE COURT: | I'm going to discuss with you waiving pretrial motions and trial rights. Do you understand that, by pleading guilty, you're giving up the right to file pretrial motions, including motions to suppress any evidence or any statements that you may have made? |
| [BENNETT]: | Yes, sir, I do understand. |
| THE COURT: | Did you discuss that decision with your attorneys? |
| [BENNETT]: | Yes, sir, I did. |
| THE COURT: | Are you fully satisfied with the decision you and your attorneys have made about waiving pretrial motions? |
| [BENNETT]: | Yes, sir, I have. |

Doc. 87, Plea Tr. at 8:13–25. Since Bennett cannot pursue a right he expressly waived, he cannot challenge his conviction on the grounds that his counsel failed to file a pretrial-suppression motion. *See Pierre*, 870 F.3d at 848.

Even if Bennett had not waived his right to file pretrial motions, his claims fail. To prevail on an ineffective-assistance-of-counsel claim, Bennett must satisfy a two-pronged test: "(1) counsel's performance fell below the *Strickland* standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, [Bennett] would not have pleaded guilty but would have proceeded to trial." *United States v. Davis,* 508 F.3d 461, 463 (8th Cir. 2007) (citing *Hill v. Lockhart*, 474 U.S. 52, 57–59 (1985)). Bennett fails to establish the first prong, and thus, his claims fail. *See Garcia v. United States*, 679 F.3d 1013, 1014 (8th Cir. 2012) ("A court need not address both prongs of the *Strickland* test if the petitioner cannot meet one of them." (citing *Strickland*, 466 U.S. at 697)).

Typically, a futile pretrial motion confirms the adequacy of counsel's performance. *See Premo v. Moore*, 562 U.S. 115, 124 (2011) (asserting that a suppression motion's futility "confirms that [counsel's] representation was adequate under *Strickland*" ); *see also Sexton v.*

11

*Beaudreaux*, 585 U.S. 961, 965 (2018) ("A fair[-]minded jurist could conclude that counsel's performance was not deficient because counsel reasonably could have determined that the motion to suppress would have failed." (citing *Premo,* 562 U.S. at 124)).  Because a pretrial-suppression motion would have been futile here, Bennett's counsel reasonably declined to file one.

Bennett argues that his counsel should have investigated the "[r]use pretextual stops" conducted by St. Louis County police departments, doc. 3-2 at 3, and then moved to suppress the evidence police found on Bennett and in his car during the January 6, 2021, incident, *id*. at 1.  This argument suffers from two flaws.  First, the mere existence of pretext does not make a stop unconstitutional.  *See generally Whren v. United States*, 517 U.S. 806 (1996); *see also id.* at 812–13 ("a traffic-violation arrest . . . would not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search'" (quoting *United States v. Robinson*, 414 U.S. 218, 221 n.1 (1973))).  In *Whren*, the Supreme Court rejected the argument that "the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id*. at 813.  Rather, a constitutional stop requires probable cause to believe the driver violated a traffic law. *Id*. at 819.

Second, even if the Court accepts Bennett's allegations—that he was driving lawfully and the victim of an unlawful stop, doc. 3-2 at 1–3—a pretrial motion would have been futile.  After the police attempted to pull Bennett over, Bennett fled twice—first by car and then by foot.  Doc. 66 at 3–4.  This double flight provided independent grounds for Bennett's arrest and subsequent search.  *United States v. Dawdy*, 46 F.3d 1427, 1431 (8th Cir. 1995); *see also United States v. Flores-Lagonas*, 993 F.3d 550, 560 (8th Cir. 2021) ("[The Eighth Circuit] ha[s] consistently held that a defendant's response to an arrest or *Terry* stop—even an invalid one— may constitute independent grounds for arrest." (citations omitted)).

According to the plea agreement, Bennett admitted that he evaded police because he "just got off probation" and knew that he had both a pistol and "that bag of stuff" inside of his vehicle. Doc. 66 at 4. Then at the change-of-plea hearing, Bennett confirmed all the facts set forth in the plea agreement. Doc. 87, Plea Tr. at 15:15–16:6. Now, Bennett does not deny his flight. *See* docs. 3, 3-1, 3-2. As such, assuming that the police's initial stop of Bennett was invalid, Bennett's "resistance provided independent grounds for his arrest, and the evidence discovered in the subsequent searches of his person and his automobile [was] admissible." *Dawdy*, 46 F.3d at 1431. Because of this, counsel acted reasonably in not further investigating pretextual stops and not filing a motion to suppress. *See Sexton* 585 U.S. at 965 (citing *Premo,* 562 U.S. at 124). Finding these claims inadequate on their face, the Court dismisses these claims without an evidentiary hearing. *Shaw*, 24 F.3d at 1043.

B. **Claim of extreme and compelling safety hazards**

Bennett also claims that his "[c]onstitutional right to be free from extreme and compeling [sic] safty [sic] hazards [is] being violated." Doc. 3 at 7. His complaint addresses the prison conditions of "USP-McCreary" in "Pine Knot, KY." Doc. 3-1 at 1. Since the filing of his complaint, Bennett has relocated to USP Lee in Pennington Gap, Virginia.[5]

Bennett's claim suffers from multiple deficiencies. First, the Court lacks subject-matter jurisdiction over this claim. While a federal prisoner may seek a writ of habeas corpus and relief from prison conditions, *see Willis v. Ciccone*, 506 F.2d 1011, 1019 (8th Cir. 1974), a complaint regarding the execution of a sentence is not cognizable under section 2255, *Bell v. United States*, 48 F.3d 1042, 1043 (8th Cir. 1995) (citing *United States v. Hutchings*, 835 F.2d 185, 186 (8th Cir. 1987)); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962) ("[Section 2255] states

---

[5] *Find an inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 28, 2024).

four grounds upon which such relief may be claimed: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' and (4) that the sentence 'is otherwise subject to collateral attack.'"). Unlike a section 2255 action, when the prisoner attacks the execution of his sentence, he must file suit "in a court with jurisdiction over his present custodian." *Bell*, 48 F.3d at 1043–44 (first citing *Braden v. 30th Jud. Cir. Ct.*, 410 U.S. 484, 494–95 (1973) and then citing *Thompson v. Mo. Bd. of Parole*, 929 F.2d 396, 398 (8th Cir. 1991). Bennett was first incarcerated in USP McCreary in Kentucky, and he is now at USP Lee in Virginia. Neither prison lies in the Eastern District of Missouri; thus, the Court lacks subject-matter jurisdiction over this claim. *Id*. at 1043.

Second, Bennett's transfer from USP McCreary to USP Lee moots his claim. "As a result of transfer," a prisoner "no longer suffers from the conditions of which he complained." *Thompson v. Smith*, 719 F.2d 938, 941 (8th Cir. 1983) (citing *Willis*, 506 F.2d at 1011). And thus "his claims [are] mooted due to his transfer to another institution." *Id.* (citing *Peck v. Mortimer*, 650 F.2d 929, 930 (8th Cir. 1981)). Bennett complains of prison conditions at USP McCreary. Doc. 3-1. But now, he is incarcerated at USP Lee. As such, he no longer suffers from the McCreary conditions of which he complained; his transfer moots his claim.

Third, Bennett's waiver prevents him from bringing this claim. In the plea agreement, Bennett "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to . . . Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." Doc. 66 at 10. Even liberally construing Bennett's complaint, Bennett complains not of prosecutorial misconduct or ineffective assistance of counsel. For this claim, he makes no allegations regarding misconduct by the prosecutor or his counsel. *See* doc. 3 at 7; doc. 3-1. As such, Bennett waived this claim. Finding this claim

14

inadequate on its face, the Court dismisses the claim without an evidentiary hearing. *Shaw*, 24 F.3d at 1043.

### C. Claim of unlawful sentence

Finally, Bennett argues his sentence was unlawful because of a criminal-history error:

> [A]fter I was sentenced, I immediately discovered that I was sentenced unlawfully, namely being unlawfully charged and sentenced with the relevant conduct of the weight of Methamphetamine rather than simple possession of a controlled substance (Fentanyl) (Count 3), in which is what I intended to plead guilty to on February 15, 2022 . . . . This Court error caused my criminal history point level to be enhanced in which subsequently lead [sic] to a longer sentence.

Doc. 3-1 at 1–2. This claim contains two significant errors.

First, Bennett pleaded guilty to "possession with intent to distribute" fentanyl, doc. 66 at 2—not "simple possession" of fentanyl, doc. 3-1 at 1–2. "[I]n a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." 18 U.S.S.G. § 1B1.3 cmt. 9. Here, police found both fentanyl and methamphetamine on Bennett and in his car during the January 6, 2021, encounter. Doc. 66 at 4–5. Then Bennett admitted these facts during the change-of-plea hearing. Doc. 87, Plea Tr. 18:10–21. Further, the Court warned Bennett that by admitting the facts, they would become relevant conduct for his sentence:

| | |
|---|---|
| **THE COURT:** | Section 4 of the plea agreement sets forth the facts you, your attorneys, and the prosecutor have agreed are all true and correct. I take it you've gone through Section 4 in detail with your attorneys and you understand all of the facts set forth in Section 4; is that right? |
| **[BENNETT]:** | Yes, sir, Your Honor, I do. |
| **THE COURT:** | Do you understand that, if you admit those facts, they become what is called relevant conduct, which is conduct that I can and will take into account in determining your sentence in this case? |

15

| | | |
|---|---|---|
| **[BENNETT]:** | | Yes, sir, Your Honor. |
| **THE COURT:** | | Do you agree that all of the facts set forth in Section 4 of the plea agreement are true and correct and that you, in fact, did do all of those things? |
| **[BENNETT]:** | | Yes, sir, Your Honor, I did, and they are true. |

*Id.*, Plea Tr. at 15:15–16:6.  As such, the Court assessed the quantities of both the methamphetamine and fentanyl to determine Bennett's base-offense level.  Doc. 66 at 7; doc. 72 at 7.

Second, Bennett's contention lies not with his criminal history but with his base-offense level.  *Compare* doc. 72 at 7 (calculating base-offense level) *with id.* at 8–14 (calculating criminal history).  The amount of drugs he possessed on January 6, 2021, played no part in his criminal-history score.  *See* doc. 72 at 8–14 (calculating criminal-history score as 14).  Rather, the Court used the amount of both methamphetamine and fentanyl to determine his base offense level for count 3, possession with intent to distribute fentanyl.  Doc. 72 at 7.

As it stands, Bennett waived this claim.  In the plea agreement, Bennett agreed, "[i]n the event the Court accepted the plea . . . and sentence[d] [Bennett] within or below [the Sentencing Guidelines] range," to "waive[] all rights to appeal all sentencing issues other than Criminal History"  Doc. 66 at 10.  The Court accepted the plea and then granted the parties' request of a downward variance—imposing upon Bennett a below-the-guidelines-range sentence.  Doc. 85, Sent. Tr. at 17:18–18:5.  While Bennett purports to challenge his criminal-history score, he actually challenges the base-offense level.  Since Bennett cannot pursue a right he expressly

16

waived, he cannot challenge his conviction on the grounds that the Court miscalculated his base-offense level.  *See Pierre*, 870 F.3d at 848.

## VI. Conclusion

The Court finds that the record conclusively establishes that Bennett is not entitled to relief.  Therefore, the Court denies Bennett's [3] Motion to Vacate, Set Aside, or Correct Sentence, and finds that Bennett is not entitled to an evidentiary hearing.

## VII. Certificate of Appealability

The Court further finds that Bennett has not made a substantial showing of the denial of a constitutional right, and, therefore, will not issue a certificate of appealability.  *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a substantial showing is a showing that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings).

So ordered this 29th day of March 2024.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE